**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA     :

      v.                     :         **Crim. No. 13-131-02-RJL**

MELVIN KNIGHT          :


## DEFENDANT KNIGHT'S MOTION TO VACATE CONVICTION BASED ON THE INEFFECTIVE ASSISTANCE OF SUPERIOR COURT COUNSEL

Melvin Knight, through counsel, moves this Honorable Court to vacate his conviction based on the ineffective assistance of his Superior Court counsel. In support, he states the following.

## BACKGROUND

On January 28, 2013, Melvin Knight and Aaron Thorpe were arrested in Washington D.C. *United States v. Knight*, 824 F.3d 1105, 1108 (D.C. Cir. 2016). Knight and Thorpe were charged with several D.C. Code offenses, including kidnapping while armed. *Id.* On January 29, 2013, Knight and Thorpe appeared in Superior Court and the case was set for a preliminary hearing on February 1, 2013. *Id.* On February 1, the court granted a two-week continuance for the preliminary hearing and the prosecutor noted that a plea offer had been extended. Hr'g before Hon. Robert Richter 3-4 (Feb. 1, 2013). The government offered a wired plea for one count of Assault with a Deadly Weapon (ADW). *Id.* at 4; Gov't. Exhibit 3 (E-mail from Assistant U.S. Attorney Trevor McFadden, Jan. 31, 2013 at 4:52:14 PM EST).

1

The next hearing occurred on February 19, 2013. *Knight*, 824 F.3d at 1108. At the February 19 hearing, the plea offer was rescinded. Prelim. Hr'g 2-3 (Feb. 19, 2013). Ultimately, the U.S. Attorney's Office dropped the Superior Court charges in May and obtained a federal grand jury indictment. *Knight*, 824 F.3d at 1108. The federal indictment included the federal charge of being a felon in possession of a firearm, as well as D.C. Code offenses of conspiracy, assault with a dangerous weapon, kidnapping while armed, burglary while armed, possession of a firearm during a crime of violence, and obstruction of justice. *Id.* The federal trial began on July 22, 2013. *Id.* at 1108-09. A jury found Knight and Thorpe guilty and they were subsequently sentenced to twenty-two years and four months, and twenty-five years respectively. *Id.* at 1109.

On appeal to the D.C. Circuit, Knight and Thorpe claimed ineffective assistance of counsel relating to the plea offer. *Id.* The Court remanded this case so the District Court could hear the ineffective assistance of counsel claim in the first instance. *Id.* at 1112 (finding defendants' claim of ineffective assistance of counsel "colorable").

**<u>HEARINGS ON INEFFECTIVE ASSISTANCE OF COUNSEL MOTION</u>**

Evidentiary hearings occurred before this Court on May 24, 2017, May 25, 2017, and September 20, 2017. On May 24, 2017, testimony was heard from defendant Knight and Jennifer Postell, a custodian of records at the Department of corrections, and Frederick Iverson, Knight's attorney before D.C. Superior Court. Tr. Of Evidentiary Hr'g 3 (May 24, 2017) [hereinafter "May 24 Evid. Hr'g"]. On May

25, 2017, this Court heard arguments on the present motion. Tr. Of Mot. Hr'g 4-5 (May 25, 2017) [hereinafter "May 25 Mot. Hr'g"]. Finally, on September 20, 2017, testimony was heard from Thorpe and Thorpe's attorney before D.C. Superior Court, David Knight ("attorney Knight"). Tr. Of Evidentiary Hearing 10, 49 (Sept. 20, 2017) [hereinafter "Sept. 20 Evid. Hr'g"].

Defendant Knight and Iverson, his court-appointed counsel, had their first meeting on January 31, 2013, when Iverson visited Knight at the D.C. jail. May 24 Evid. Hr'g 17. Knight recalls discussing the preliminary hearing set for the following day and the possibility of a Knight's release. *Id.* Knight was not at that time told about the Government's plea offer. *Id.* At the February 1 hearing, while standing in open court at the defense table, Iverson first mentioned the plea agreement to Knight. *Id.* at 18-19. Knight asked Iverson about the sentence length and was disappointed to find out that it could be ten years. *Id.* at 19. Knight was particularly interested in getting out of jail because his wife was about to have a baby. *Id.* at 18. Knight expressed that he did not want to go to jail for ten years, and Iverson said "just hold up, I'm going to come over to the jail to talk to you." *Id.* at 19.

Between the February 1 hearing and the February 19 hearing when the plea offer was rescinded, Iverson did not meet with Knight. *See id.* at 24, 97-98; *see also* Gov't. Exhibit 6 (Appointment and Voucher for Legal Services). Iverson could not independently recall meetings with Knight, but he identified each meeting from his billing statement. May 24 Evid. Hr'g 96-98. Between January 31, when the Government extended a plea offer, and February 19, when the plea offer was

rescinded, Iverson identified only one meeting with Knight, one-on-one at the D.C. Jail and that is was on January 31 when the plea offer was not discussed. *Id.* at 97-98. On February 1, Iverson said he would have seen Knight in the cellblock, in a crowded room prior to the hearing. *Id.* at 97. His billing records reflect all of the time he spent talking with defendant, co-defendant's attorney and anyone else present. *Id.* at 96. The jail's records indicate Iverson visited Knight on February 5 at the jail as well. However, Iverson did not bill for this meeting. *Id.* at 122-23. And Iverson testified that his billing records were accurate. *Id.* at 94. Consistent with Mr. Iverson's lack of records to indicate a visit with Knight on February 5, Ms. Postell confirmed that just because there is an entry in the log of inmate legal visits, that does not mean that the attorney actually visited the client. *Id.* at 76. Thus, at the February 19 hearing, Knight first heard that he could have charges brought against him in District Court, the same time the plea offer was withdrawn. *Id.* at 27-28.

Because these meetings were "routine" for Iverson and occurred several years prior to the present motions, he could speak only to the general topics he believed he would have discussed with defendant Knight, and his usual practice in such cases, but he did not have specific recollections regarding his conversations with defendant Knight. *See, e.g., id.* at 103, 107-08. Iverson could not recall whether he had outlined the penalties resulting from the Voluntary Guidelines with defendant Knight. *Id.* at 132. In particular, Iverson was not aware that the charges might be brought in Federal Court and was surprised when Knight was indicted federally. *Id.*

at 132-33.[1] Iverson could not remember how or where he was informed that defendant Knight would not take the plea offer, although, as discussed above, he did not discuss the plea offer at any jail visit. May 24 Evid. Hr'g at 110-12.[2]

Attorney Knight also testified before this Court as to his recollections regarding the plea offer with his own client and discussions with Iverson. Attorney Knight testified that he understood from Iverson before the February 19 hearing that defendant Knight would not accept the plea. Sept. 20 Evid. Hr'g 63. However, attorney Knight garnered this fact from Iverson during chance encounters at the courthouse. *Id.* at 83. Attorney Knight and Iverson never met to discuss in depth the plea offer. *Id.* at 83-84. Attorney Knight did not have any personal knowledge of the conversations between Iverson and defendant Knight as no meetings were held with all parties. *Id.* at 83. Aaron Thorpe testified that he never discussed the plea offer with defendant Knight nor did he know whether defendant Knight was aware of the plea offer. *Id.* at 23-24, 36-37, 42.

### ARGUMENT

"In all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defense." U.S. Const., amend. VI. The purpose of the right to counsel is to "protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984) ("access to counsel's skill and knowledge is

---

[1] Attorney Knight testified that he believed he discussed the potential transfer to federal court with Mr. Thorpe at the second meeting he had with Thorpe sometime between February 1st and 19th. Sept. 20 Evid. Hr'g 59-60.

[2] Mr. Iverson's recollections were very limited because, as he explained, his memory is very faulty because of a serious head injury suffered in 2004, which resulted in numerous surgeries. *Id.* at 150-51.

necessary to … meet the case of the prosecution"). The right to counsel is not limited to mere presence of an attorney, it's the right to *effective* assistance of counsel. *Id.* at 686 (emphasis added). The right to counsel also applies to "pretrial critical stages" of a criminal case. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (finding right to counsel in pretrial proceedings because "defendants cannot be presumed to make critical decisions without counsel's advice"); *see also Missouri v. Frye*, 566 U.S. 134, 140 (2012). An otherwise fair trial does not necessarily cure pretrial problems. *See Lafler*, 566 U.S. at 165 (rejecting that fair trial cured the ineffective assistance of counsel during plea negotiations).

To establish ineffective assistance of counsel, the defendant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *United States v. Solofa*, 745 F.3d 1226 (D.C. Cir. 2014) (*citing Strickland*, 466 U.S. at 687).

**A. Iverson's Assistance Regarding the Plea Offer was Deficient.**

An attorney's performance is deficient if it is so serious that counsel was not functioning as the "counsel" guaranteed in the Sixth Amendment. *Strickland*, 466 U.S. at 686. There are not set requirements for an attorney's behavior, so this inquiry is based on all the circumstances. *Id.* at 688. This inquiry can be guided by "prevailing professional norms." *Id.* An attorney's overarching duty is to advocate for the defendant's cause, which includes consulting with the defendant on important decisions. *Id.* The reasonableness of a counsel's action might be

determined by the defendant's own statements or actions, including conversations between attorney and client. *Id.* at 691.

In light of "the reality that criminal justice today is for the most part a system of pleas, not a system of trials" the attorney's role is particularly important for plea negotiations. *See Lafler*, 566 U.S. at 170; *cf. Frye*, 566 U.S. at 143 (a lapsed or rejected plea bargaining lacks any supervision or oversight). A defendant has a right to effective assistance of counsel in considering a plea offer. *Id.* at 168; *see Frye*, 566 U.S. at 140-41 (two-part test from *Strickland* applies to the ineffective assistance of counsel claims in plea bargaining context). Thus, attorneys have a "duty to communicate formal offers from the prosecution to accept a plea." *Frye*, 566 U.S. at 145. Professional requirements can guide any assessment of whether an attorney has fulfilled this duty. *See id.* ("[ABA] recommends defense counsel 'promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney'").

Here, Iverson failed to communicate the plea offer to defendant Knight and Knight was not aware of the plea details or risk of a federal trial. Although Knight was made aware of the plea bargain on February 1, the brief mention that the government extended an offer carrying ten years in the midst of open court proceedings should not be viewed as satisfying the *Frye* duty to communicate plea offers. May 24 Evid. Hr'g. There is no evidence of any meeting between Iverson and Knight at the jail between February 1 and February 19. *See* May 24 Evid. Hr'g and 94. Thus, Knight was not informed about maximum penalties, minimum penalties,

the Voluntary Superior Court Guidelines, or potential additional charges. *Id.* at 20-21. The omission of the potential for federal charges may not have been intentional, as Iverson was surprised to find out when charges were brought in federal court. May 24 Evid. Hr'g at 132-33. Regardless, until February 19 when the plea offer was rescinded, Knight was not aware that he could potentially be charged in District Court. *Id.* at 27-28.

On February 19, Iverson did not respond to the government's assertion that both defendants rejected the plea offer – only the co-defendant's attorney asserted that Knight had rejected the plea offer. Prelim. Hr'g 2-3 (Feb. 19, 2013). Although attorney Knight understood from brief conversations with Iverson that defendant Knight would not accept the plea, he did not have personal knowledge of the communications between Iverson and Knight about the plea offer. Sept. 20 Evid. Hr'g 83. Thus, attorney Knight's testimony does not illuminate whether Iverson fulfilled his responsibility to defendant Knight regarding the plea offer. In the end, defendant Knight denied that the plea offer was discussed before it was withdrawn and Mr. Iverson had no specific recollection of any discussion regarding the plea offer.

**B. Knight Was Prejudiced by Iverson's Deficient Performance.**

Where the right to counsel is denied, prejudice is shown where the "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler*, 566 U.S. at 168. The standard for establishing prejudice is a reasonable probability that, but for the counsel's

error, the result of the proceeding would have been different. *Solofa*, 745 F.3d at 1229 (*citing Strickland*, 466 U.S. at 694). To support the claimed prejudice, the defendant must show a reasonable probability that (1) defendant would have accepted the earlier plea; (2) the plea would have been entered without prosecution canceling it or trial court refusing it; or (3) the end result of the process would have been more favorable and resulted in a lesser charge or lesser sentence. *Frye*, 566 U.S. at 147. Based on familiarity with the "boundaries of acceptable plea bargains and sentences" the Court considered the latter two inquiries easily determined by an objective assessment. *Id.* at 149.

Here, Knight was prejudiced by Iverson's failure to properly inform him of the plea. First, Knight asserts that he would have accepted the plea at the time if it had been explained to him. May 24 Evid. Hr'g 40. Additionally, since the plea was wired, co-defendant Thorpe was also required to accept it, and at the time Thorpe's attorney understood that Thorpe would have accepted the plea. *Id.* at 83. The ADW plea would have had a more favorable outcome in both sentencing and charges. The plea offer was for one count of ADW as compared with the charges brought in federal court that included additional federal and D.C. Code violations. *Knight*, 824 F.3d at 1108. Additionally, the potential sentence under the ADW charge was much lower than the sentences under the federal and D.C. Code violations. Finally, there is no evidence to suggest that the judge would have rejected the plea or that the government would have independently rescinded the offer.

Respectfully submitted,

/s/_____
Mary E. Davis
Davis & Davis
1350 Connecticut Avenue, NW Ste 202
Washington, DC 20036
(202) 234-7300

*Counsel for Melvin Knight*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this response was served on all parties of record via the

Court's CM/ECF System on this 2nd day of February 2018.

/s/_____
Mary E. Davis