**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | |
| **AARON THORPE** | : | **Crim No. 13 – 131 - 01 (RJL)** |
| **Defendant** | : | |
| | : | |

**DEFENDANT THORPE'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE MOTION TO VACATE HIS CONVICTION BASED ON INEFFECTIVE ASSISTANCE OF SUPERIOR COURT COUNSEL**

Defendant, Aaron Thorpe, through counsel, respectfully submits this Reply to the Government's Response to the Defendants' Claims of Ineffective Assistance of Counsel. Mr. Thorpe submits that the Government's legal analysis is flawed and that its argument that the defendants have failed to prove ineffective representation by their prior counsel in the Superior Court of the District of Columbia, is not supported by the record of the evidentiary hearing held before this Court on remand from the U.S. Court of Appeals for the D.C. Circuit. Accordingly, Mr. Thorpe's conviction should be vacated and the Government's expired plea offer that lapsed due to counsel's ineffectiveness, should be reinstated.

**I.      THE GOVERNMENT'S LEGAL ANALYSIS OF MR. THORPE'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS FLAWED**

The Government devotes several pages of its Response (hereafter "Gov. Resp.") to a recitation of the well-settled law regarding the general standard to determine whether an attorney's performance is constitutionally deficient. Gov. Resp. 22-24. However, the Government fails to mention, no less discuss, any of the specific factors that courts have considered in determining whether counsel's representation was deficient in the context of a lapsed plea offer.

1

As discussed at some length in Mr. Thorpe's motion (hereafter "Def. Mot."), courts have recognized that counsel has a duty to communicate and fully explain to his client not only the specific terms of the plea offer itself, but also all available options and the ramifications of accepting the offer or proceeding to trial. Def. Mot. 11-14 (citing cases). Fundamentally, defense counsel renders constitutionally deficient performance if he allows a favorable plea offer to lapse without fully advising the defendant of the offer's terms or providing the defendant with an adequate opportunity to consider the offer. *United States v. Thompson*, 721 F.3d 711, 714 (D.C. Cir. 2013) (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012). *See also Lafler v. Cooper*, 566 U.S. 156, 169-171 (2012) (counsel's performance was deficient where his erroneous advice led to defendant's rejection of favorable plea offer).

While the Supreme Court has refrained from defining detailed standards for the proper discharge of counsel's duties in the plea bargaining process, *see Frye*, 566 U.S. at 145, a number of federal appellate courts have held that defense counsel must discharge certain responsibilities in order to provide effective representation where the prosecution has extended a plea offer to the defendant. *See, e.g., United States v. Vaughn*, No. 16-3138, 2017 WL 3484974 (3d Cir. Aug. 15, 2017) (effective counsel must inform defendant of comparative sentence exposure between standing trial and accepting plea offer, including statutory maximums/minimums and sentencing guidelines calculations); *United States v. Herrera*, 412 F.3d 577, 580-81 (5th Cir. 2005) (same); *Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003) (effective counsel must inform defendant of all available options and alternatives in discussing plea offer). *See also* Def. Mot. 12-13 (citing cases).

The Government's failure to address these court-recognized standards creates a gaping hole in its legal analysis. The case law clearly requires defense counsel to consult with the defendant concerning all aspects of a plea offer, including the potential consequences of either accepting or rejecting the offer. Thus, a thorough explanation and consultation between attorney and client is required. Because counsel

must do much more than merely convey the offer to the defendant, this is not a consultation that can take place in open court or in a quick cellblock conversation. Given that the vast majority of federal criminal cases are resolved through guilty pleas, defense counsel's consultation concerning a plea offer – especially one that is very favorable – is perhaps the most important communication counsel and the defendant will have in the entire case.

The Government's legal analysis is fundamentally lacking in another essential respect – it omits any discussion whatsoever of the ineffectiveness calculus in the context of a wired plea offer, such as the one at issue in this case. Mr. Thorpe will not repeat here the lengthy discussion in his motion of the case law recognizing that wired plea offers create a heightened burden on both defense attorneys and judges to protect defendants from potential prejudice. *See* Def. Mot. 14-17 (citing cases). These cases acknowledge that wired plea cases carry a greater risk that a defendant may be deprived of a favorable plea deal as a result of his codefendant's outright rejection of the offer or failure to respond to the offer before it expires. When the codefendant's attorney fails to fulfill his constitutional duty to fully explain to his client all aspects of the offer – resulting in the codefendant's uncounseled and ill-advised rejection of the deal -- the prejudice to a defendant who wants to accept the favorable offer and is consequently left with the prospect of receiving a much lengthier sentence after a conviction at trial, is palpable and devastating.

In this context, the logical extension of the *Frye* Court's holding that counsel has a constitutional duty to timely communicate a plea offer to the defendant requires that counsel also communicate effectively with co-counsel to ensure that the wired plea offer has been fully explained to the codefendant. This duty, is most critical where, as here, the defendant has expressed a willingness to accept a highly favorable plea deal. As discussed more fully below, the failure of Mr. Thorpe's counsel to discharge this duty constitutes ineffective assistance. The government's failure to address Mr.

Thorpe's ineffectiveness claim in the wired plea context strips its legal analysis of any contextual relevance or persuasiveness.

## II. THE GOVERNMENT'S ARGUMENT THAT THE DEFENDANTS FAILED TO ESTABLISH DEFICIENT REPRESENTATION BY THEIR COUNSEL IS UNSUPPORTED BY THE RECORD

The Government contends that the evidentiary hearing evidence demonstrates that neither defendant established that their respective attorneys rendered deficient performances regarding the wired plea offer. Gov. Resp. 26-30. However, a fair reading of the record indicates that the Government's interpretation of the evidence is strained as to the performance of Mr. Knight's counsel and is wholly inadequate in evaluating the performance of counsel for Mr. Thorpe.

### A. Record Evidence Establishes that Mr. Knight's Performance was Deficient

The Government asserts that the record evidence – in particular the testimony of codefendant Knight's lawyer, Mr. Iverson – defeats Knight's claim that his counsel failed to adequately advise him of the plea offer's terms and the relative consequences of accepting the offer or going to trial. Gov. Resp. 27-28. The Government's reliance on Iverson's testimony is misplaced. A close reading of the record indicates that Iverson did not contradict Knight's testimony that his lawyer failed to inform him of his likely sentencing exposure under the plea offer in contrast to rejecting the offer and facing potentially more serious charges.

According to Melvin Knight, his only conversation with Iverson about the plea offer occurred briefly while they were in court. Tr. 5/24/17 Hr'g at 18 -19. Contrary to the Government's claims, Iverson's testimony essentially corroborates Knight's description of their brief conversation about the plea offer. [1] Iverson testified that he had no recollection of a meeting with Knight during which he

---

[1] Interestingly, Iverson recalls the investigation and discussions with his client regarding the discovery and evidence. *See* , Tr. 5/24/17 Hr'g at 104-105, 114-115. Defendant submits that it makes sense that Iverson is able

4

advised his client about the "ADW gun" charge or of the potential penalties. Tr. 5/24/17 Hr'g at 101. Iverson further testified that he had no recollection of discussing with his client the sentencing guidelines for the plea offer. Tr. 5/24/17 Hr'g at 102. Other record evidence indicates that after telling Knight in open court that the government had made a plea offer, Iverson did not meet with him again before the offer lapsed on February 19, 2013. Clearly Iverson never explained the potential mandatory minimum and/or maximum sentences that Knight faced if he either accepted or rejected the plea offer. *See* Def. Mot. 6-8. Perhaps most telling, Iverson never advised Knight that the plea offer was favorable and that he was likely to face much more serious charges and a federal court indictment if he rejected the plea offer. Tr. 5/24/17 Hr'g at 135.

The Government ignores the weight of this evidence. It does acknowledge, as it must, that Iverson could not recall specifically his conversation with Knight about the plea offer. Gov. Resp. 27. But left with little to support its argument, the Government cites to Iverson's testimony about his "general practice" in conveying a plea offer to a client. Gov. Resp. 27-28. Despite Iverson's testimony that he could not recall his conversation with Knight about the plea offer, the Government contends that "[t]here is no reason to believe that Attorney Iverson departed from his general practice in advising defendant Knight of the government's plea offer . . . ." Gov. Resp. 28. In the end, that is the thin reed upon which the Government's argument rests. Not surprisingly, there is no legal authority cited for the proposition that evidence of counsel's "general practice" in representing criminal defendants is sufficient to defeat a particular defendant's deficient performance of counsel claim where the lawyer lacks any specific recollection of his performance in the case at issue.

---

to recall specifics regarding conversations and/or meetings about the discovery and the investigation, all of which occurred after February 19, 2013, but does not have any recollection of conversations or discussions about the plea offer between February 1, 2013 and February 19, 2013 – when the plea offer lapsed. He recalls the conversations and meetings that did occur, and does not recall conversations about the "ADW" plea offer because they simply did not occur.

Under settled law, Iverson's performance was constitutionally deficient because he allowed a favorable plea offer to lapse without fully informing Melvin Knight of its terms and the likely consequences of accepting or rejecting the offer or providing him with a sufficient opportunity to consider the offer. *See Frye*, 566 U.S. at 145; *Thompson*, 721 F.3d at 714. In light of this authority and given the undisputed record evidence here, this Court should reject the Government's unsupported argument that Melvin Knight has failed to prove that the representation he received was constitutionally inadequate.

**B. Record Evidence Supports Mr. Thorpe's Deficient Representation Claim**

Mr. Thorpe's deficient representation argument rests on different, but equally valid, grounds. As acknowledged in Mr. Thorpe's motion, Def. Mot. 7-8, and as the Government maintains here, Gov. Resp. 27-30, counsel for Mr. Thorpe, David Knight, fully advised him of the wired plea offer. In fact, counsel's advice resulted in Mr. Thorpe's decision to accept the offer. If this was not a wired plea offer case, Mr. Thorpe would lack any grounds to challenge his attorney's performance relating to the plea deal.

But the Government's offer of a plea deal here was wired and therefore, securing the favorable plea offer for Mr. Thorpe required that codefendant Knight also accept the deal. Under these circumstances, Mr. Thorpe's counsel had a heightened duty to ensure that his co-counsel, Mr. Iverson, fulfilled his constitutional responsibility to properly advise his client, codefendant Knight, of the terms of the joint offer and the relative consequences of acceptance versus rejection of the deal. *See* Def. Mot. 17-21. The record evidence shows that Attorney Knight failed to take the necessary actions to fulfill this responsibility. Therefore, his performance regarding the wired plea offer was constitutionally deficient.

The record indicates that Attorney Knight failed to effectively communicate and consult with co-counsel concerning the disposition of the joint plea offer. The Government notes that co-counsel Iverson informed Attorney Knight that he did not "expect" his client (Melvin Knight) to accept the plea offer. Gov. Resp. 30 (quoting 9/20/17 Tr. 63-64). In his hearing testimony, Attorney Knight acknowledged that due to the "different" nature of a wired plea offer, it was incumbent upon him to consult with co-counsel. Tr. 9/20/17 Hr'g at 84. Yet, he failed to follow-up on the brief conversation he had with Iverson about the plea offer and did not even attempt to schedule a meeting with him – and perhaps with their clients, as well -- to discuss their clients' mutual interests in accepting a favorable plea offer. Tr. 9/20/17 Hr'g at 83-84. Inexplicably, Attorney Knight merely relied on Iverson's "impression," that codefendant Melvin Knight was not going to accept the plea deal, Tr. 9/20/17 Hr'g at 63, 83, and did nothing more to ensure that the codefendant's rejection of the offer was based upon full and complete information about his likely sentence exposure if he went to trial and was convicted of the more serious charges that he almost certainly would be facing. Moreover, in response to the Court's question, Attorney Knight acknowledged that he is aware that other attorneys in his office have meetings with co-defendant's counsel in wired plea cases in order to try to assure that their clients can have the opportunity to accept the wired plea offers. Tr. 9/20/17 Hr'g at 108-109.

Just as counsel has a Sixth Amendment duty under *Frye* to communicate an individual plea offer to the defendant, when a wired plea offer is involved, counsel has a broader constitutional duty to communicate effectively with co-counsel concerning the codefendant's understanding of the offer, in order to protect to the extent possible the defendant's right to obtain a favorable plea deal. While it appears that there are no reported cases directly on point, a decision by the D.C. Circuit involving an ineffectiveness claim in the wired plea offer context is instructive here.

In *United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997), the defendant argued that he would have accepted a wired plea offer but for his lawyer's erroneous advice as to his sentencing exposure under the plea. The court held that counsel's representation was deficient but that a remand was required to determine if the defendant could show that he was prejudiced by the deficient performance of counsel. *Id.* at 1512. In ordering the remand, the court noted that to succeed on his ineffectiveness claim, the defendant would be required to "establish not only that he would have taken the plea offer if his lawyer had advised him correctly, but also either that each of his co-defendants would have accepted their respective plea offers, or that the Government would have offered [the defendant] an unwired plea." *Id.*

Thus, the court of appeals in *Gaviria* tied the resolution of the prejudice element of the defendant's ineffectiveness claim in the wired plea context to his codefendants' positions as to the group offer. A similar analysis applies to the deficient performance prong of an ineffectiveness claim where the plea offer is wired to the acceptance of a codefendant because the defendant's right to accept a favorable offer – the right protected under the *Frye* line of cases – is tied to his codefendant's decision to accept or reject the deal. Thus, in a wired plea case, such as at issue here, the analysis in *Frye* and *Gaviria*, respectively, must be read together to determine whether counsel rendered deficient representation.

Because Mr. Thorpe's lawyer failed to ensure that the joint plea offer did not lapse before both defendants had fully considered it after having been properly advised by their respective counsel, his performance was constitutionally deficient. Contrary to the Government's argument, this conclusion is supported by the record evidence in the case and by the applicable case law.

**III.     THE RECORD ESTABLISHES THAT MR. THORPE ACCEPTED THE WIRED PLEA OFFER AND THAT HIS CODEFENDANT WOULD HAVE ACCEPTED IT IF HIS COUNSEL HAD ADVISED HIM CORRECTLY**

The Government argues that the defendants have failed to establish prejudice resulting from their respective attorney's deficient performances.  Gov. Resp. 30-35.  Under settled law, to show *Strickland* prejudice based on deficient advice of counsel in rejecting a favorable plea offer, a defendant must show a reasonable probability that he would have accepted the offer, that the court would have accepted the plea, and that the conviction and sentence would have been less severe under the plea deal.  *Lafler v. Cooper*, 566 U.S. at 164.  In the instant case, the Government does not dispute that Mr. Thorpe wanted to accept the wired plea offer or that the Superior Court judge would have accepted the defendants' guilty plea entered pursuant to the proposed plea agreement.  Moreover, the Government acknowledges that the federal sentences imposed upon the defendants after trial were more severe than their sentencing exposure under the Superior Court plea offer.  Gov. Resp. 30-31.

But the Government claims that "the record plainly demonstrates" that codefendant Knight was not going to accept the plea offer and that because the pleas were wired, Mr. Thorpe "never would have been able to accept the plea offer."  Gov. Resp. 31.  In making this argument, the Government misreads the record and ignores the totality of the record evidence establishing that Knight would have accepted the offer if his attorney had given him the correct advice.  The Government makes the point that the hearing evidence indicates that Knight was uninterested in the plea offer because he was focused on securing his release from jail and he was not inclined to plead guilty at that time.  Gov. Resp. 31-34.

However, as discussed more fully in Section II, *supra*, at the time the plea offer was extended, Knight's attorney had not explained to him that if he rejected the offer, he would likely face much more serious charges that carried a much greater sentencing exposure.  Had Knight's counsel fulfilled his constitutional duty to fully advise his client of the all the relevant factors relating to the plea offer, it is

reasonably probable that Knight would have been focused on the longer-term consequences of his plea decision-making. The Government's failure to take into account the particular circumstances surrounding Knight's premature and uncounseled rejection of the plea deal undermines the thrust of its argument.

The Government dismisses out-of-hand Knight's hearing testimony that had his lawyer properly advised him about the plea offer, he would have accepted it. Tr. 5/24/17 Hr'g at 40. But under the applicable case law, evidence that a defendant would have accepted the plea deal is not only significant, it is essential to establish prejudice under the *Lafler* line of cases. Contrary to the Government's characterization, Knight's testimony that he would have accepted the offer satisfies the first prong of the prejudice test under *Lafler*. *See United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (defendant's statement that he would have accepted plea offer if he knew actual sentencing exposure and significant disparity between sentence imposed after conviction at trial and sentence exposure under plea offer can establish prejudice prong of ineffectiveness during plea bargaining claim).

As stated above, the Government acknowledges that the sentences imposed on the defendants – 268 months' incarceration for Knight and 300 months' imprisonment for Thorpe – were more severe than their sentencing exposure if they had pleaded guilty to the ADW charge in Superior Court, which carried a maximum sentence of 10 years imprisonment. In *Lafler*, the Court found that the defendant had established *Strickland* prejudice by having shown that but for counsel's deficient performance, there is a reasonable probability that he would have accepted the plea offer. 566 U.S. at 174. The Court supported its finding by noting that as a result of not accepting the offer and being convicted at trial, the sentence imposed on defendant was 3 ½ times greater than he would have received under the plea. *Id.*

Other courts also have pointed to the disparity between the plea offer and the potential sentence exposure in going to trial as persuasive evidence of a reasonable probability that a properly advised

10

defendant would have accepted the offer. *See, e.g., Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (remanded for evidentiary hearing on ineffectiveness claim where substantial disparity between 5-year plea offer sentence and 156-months' imprisonment defendant ultimately received after trial); *Cullen v. United States*, 194 F.3d 401, 404, 407 (2d Cir. 1999) (disparity between plea offer exposure of 78-97 months and sentence exposure at trial of 121-151 months constitutes positive factor bearing on defendant's credibility that with proper advice, he would have pled guilty); *United States v. Day*, 969 F.2d 39, 44-47 (3d Cir. 1992) (finding ineffectiveness where plea offer was for 5 years and defendant received 22 years after trial).

The record evidence as to the charging and sentencing disparity in this case is overwhelming. Rather than pleading guilty to a single Superior Court charge under the plea deal, the defendants faced a number of more serious charges and a federal prosecution. Ultimately, Mr. Knight's sentence was 148 months greater than the maximum sentence under the plea offer. Moreover, testimony at the hearing indicated that Knight's sentence had he entered an early plea to the ADW charge in Superior Court would likely have been below the top of the guideline range – which was between 66-72 months. Tr. 9/20/17 Hr'g at 78-80, 82, 84. This disparity is objective evidence that supports the credibility of Knight's testimony that had he been advised of the difference in his sentencing exposure, he would have accepted the offer. *See Cullen*, 194 F.3d at 404, 407.

The sentencing disparity evidence is even stronger in Mr. Thorpe's case. His sentence of 300 months' incarceration was 180 months greater than the maximum statutory sentence under the plea and his Superior Court guidelines range would have been either 24-66 months or 30-72 months – far less than the statutory maximum for ADW. Tr. 9/20/17 Hr'g at 78-80, 82. The sentence Mr. Thorpe ultimately received is 5 times greater than a sentence of 60 months, which was near the top of the

guideline range under the plea offer that was allowed to lapse. Not surprisingly, Mr. Thorpe wanted to accept the plea offer.

To prove prejudice in the wired plea context, defendant must also show that given proper legal advice, his codefendant would have accepted the plea offer, as well. *United States v. Gaviria*, 116 F.3d at 1512 (cited with approval in *Lafler*, 566 U.S. at 164); *Benitez v. United States*, 60 A.3d 1230, 1238 (D.C. 2013).[2]

For the reasons explained above, the record evidence establishes a reasonable probability that Mr. Thorpe's codefendant would have accepted the wired plea offer but for his lawyer's deficient advice. Therefore, Mr. Thorpe has shown a reasonable probability that both he and Mr. Knight would have accepted the plea offer and that their convictions and sentences would have been less severe under the plea deal. The Government's argument to the contrary does not hold up in light of the record evidence or the controlling case law.

IV. **THE GOVERNMENT DOES NOT DISPUTE THAT THE PROPER REMEDY FOR THE CONSTITUTIONAL VIOLATION HERE IS TO REINSTATE THE WIRED PLEA OFFER**

In his motion, Mr. Thorpe argued that, pursuant to the *Lafler* Court's directive, the proper remedy for the Sixth Amendment violation that resulted in his conviction and sentence in this case, is for the Court to order the Government to reoffer the original plea deal. Def. Mot. 21-22. Because the *Lafler* ruling is controlling and because the Government did not address this remedy in its filing, the Court should consider the point as conceded.

---

[2] The Government inadvertently cites *Benitez* as a decision of the D.C. Circuit, rather than the D.C. Court of Appeals. Gov. Resp. 26, 35. While the decision in *Benitez* is not binding on this Court, its ruling is consistent with the D.C. Circuit's decision in *Gaviria*, which is the controlling precedent here.

12

**CONCLUSION**

For the reasons set forth herein, as well as those in Mr. Thorpe's previously-filed motion, this Court should vacate Mr. Thorpe's conviction and order the Government to reinstate the original plea offer.

Respectfully submitted,

/s/
Howard B. Katzoff
717 D Street, N.W., Suite 310
Washington, D.C. 20004
(202) 783-6414
katzoffh@aol.com
Counsel for Aaron Thorpe

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply to the Government's Response to Defendant's Motion To Vacate Conviction Based on Ineffective Assistance of Superior Court Counsel was filed via the Electronic Court Filing System (ECF), causing a copy to be served upon AUSA Pamela Satterfield, Office of the United States Attorney, 555 Fourth Street, N.W., Washington, D.C. 20530, this 29th day of ___April___, 2018.

_____/s/_____
Howard B. Katzoff