**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **Crim. No.: 13-131-02 (RJL)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **MELVIN KNIGHT,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S RESPONSE TO THE COURT'S**
**FEBRUARY 13, 2021 MINUTE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Court's Order ordering the government to address how releasing defendant Knight immediately is in the interest of public safety. *See*, Court's Minute Order dated February 13, 2021. In support of its motion, the United States relies on the following points and authorities and any other such points and authorities as may be raised at any hearing on this matter.

**The Government's Response**

In its previous submission, the government indicated that it does not oppose the defendant's request for immediate release. *See* ECF# 157 at 2. As we previously stated the defendant has already served the maximum sentence of incarceration that he could have served under the original plea offer in Superior Court, and incarcerating defendant Knight further contravenes the D.C. Circuit's opinion and remand directive to this Court. *See* ECF# 160. Further incarceration would be improper; accordingly, the government's position cannot be based on an assessment of public safety.[1]

---

[1] According to U.S. Bureau of Prison records and calculations, defendant Knight would have finished serving 8 years of incarceration on or about January 28, 2021.

More broadly, the Court lacks authority to seek an "explanation 'for [the government's] position" and inquire about the government's "thinking" on this issue." "Our legal system does not contemplate an inquisitorial role for federal judges." *In re United States*, 398 F.3d 615, 617 (7th Cir. 2005) (per curiam). Particularly when dealing with actions of the Executive Branch, separation of powers principles constrain the courts' inherent and supervisory authority. *See*, *e.g.*, *Laird v. Tatum*, 408 U.S. 1, 15 (1972) (separation of powers forbids courts from becoming "continuing monitors of the wisdom and soundness of Executive action"); *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 131 (1940) ("The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied that such a power was never intended to be given to them.") (citation omitted).

These constraints apply equally to criminal prosecutions. "[T]he federal judiciary's supervisory power over prosecutorial activities that take place outside the courthouse is extremely limited, if it exists at all." *United States v. Lau Tung Lam*, 714 F.2d 209, 210 (2d Cir. 1983) (citing *United States v. Payner*, 447 U.S. 727 (1980)). "Prosecutorial decisions are usually 'made outside the supervision of the court.'" *In re United States*, 441 F.3d 44, 58 (1st Cir. 2006) (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987)); *see also United States v. Dominguez-Villa*, 954 F.2d 562, 565 (9th Cir. 1992) ("A district court does not have general supervisory powers over the co-equal executive branch of government.").

Respectfully, this Court's inquiry transgresses these principles because it seeks information about decisions of a federal prosecutor's office. On the rare occasions when a district court has tried to supervise prosecutorial decision making in a manner similar to this Court's inquiry, the

appellate courts have prohibited such actions. For example, in *In re United States*, 503 F.3d 638 (7th Cir. 2007), a district court judge "propounded [a] set of interrogatories to the United States Attorney" concerning a cooperating defendant's eligibility for a government motion under U.S.S.G. § 5K1.1. 503 F.3d at 640. These interrogatories sought information about, *inter alia*, the "status of the other investigations" the defendant was cooperating on, when the government expected to file criminal charges in those cases, and "any reason" the government had "to believe" that the defendant would "not continue to cooperate." *Id.* The court refused to accept or reject the defendant's guilty plea until it received answers to its interrogatories. *Id.* at 639-40. The Seventh Circuit issued a writ of mandamus requiring that the district court rule on the government's motion "without requiring access to information about ongoing investigations or deliberations within the Executive Branch." *Id*. at 643. The district court's questions were "*questions a United States Attorney might well ask of an Assistant United States Attorney; they are not appropriate questions for the Judicial Branch to ask of the Executive Branch*." *Id.* at 641 (emphasis added). The court also noted that "[m]ultiple privileges cover the internal deliberations of the Executive Branch, just as they do for the Judicial Branch's internal deliberations." *Id*.

In another case, a judge sought to investigate the government's application for a purportedly overly broad grand jury disclosure order. *In re United States*, 398 F.3d at 616-17. The judge "threatened to hold the [AUSA who sought the disclosure order] in criminal contempt of court, and he demanded to know who within the United States Attorney's Office participated in the decision to file such a request and why they had approved it." *Id*. at 617. The Court of Appeals issued a writ of mandamus, concluding "that the inquiry is inappropriate and must cease." *Id*. It explained that *"[t]he fundamental problem with this inquiry is that the United States Attorney is*

3

*not answerable to a judge for the deliberations among his staff.*" *Id.* at 618 (emphasis added).

Moreover, "[t]he intra-office conversations and memoranda that the judge wants to see are covered

by multiple privileges." *Id.* *"How the United States reaches its litigating positions, who said what*

*to whom within the prosecutor's office, and so on, are for the Attorney General and the President*

*to evaluate." Id.* (emphasis added). Although "[j]udges often are tempted to seek a larger role in

the conduct of litigants," that "temptation must be resisted in order to maintain separation between

executive and judicial roles." *Id.*

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
 New York Bar No. 4444188

By:     /s/ *Emory V. Cole*
 Emory V. Cole
 PA. Bar #49136
 Assistant United States Attorney
 555 Fourth Street, N.W., Fourth Floor
 Washington, D.C. 20530
 Emory.Cole@usdoj.gov
 Telephone: (202) 252-7692


 /s/ *John Crabb, Jr.*
 John Crabb Jr.
 Chief, Criminal Division
 N.Y. Bar No. 2367670
 United States Attorney's Office
 555 4th Street, N.W.
 Washington, D.C. 20530
 (202) 252-1794
 john.d.crabb@usdoj.gov

4