IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


United States of America,      ) Criminal Action
                               ) No. 13-cr-131-1
              Plaintiff,       )
                               ) STATUS HEARING
vs.                            )
                               ) Washington, DC
Aaron Thorpe,                  ) September 19, 2022
                               ) Time:  4:10 p.m.
              Defendant.       )
_____

TRANSCRIPT OF STATUS HEARING
HELD BEFORE
THE HONORABLE JUDGE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For Plaintiff:       Peter S. Smith
                     UNITED STATES ATTORNEY'S OFFICE
                     Appellate Division
                     555 4th Street, NW
                     Eighth Floor
                     Washington, DC 20530-0001
                     (202) 252-6769
                     Email:  Peter.smith@usdoj.gov

For Defendant:       Howard Bernard Katzoff
                     LAW OFFICES OF HOWARD KATZOFF
                     717 D Street, NW
                     Suite 310
                     Washington, DC 20004
                     (202) 783-6414
                     Email:  Katzoffh@aol.com

_____

Court Reporter:      Janice E. Dickman, RMR, CRR, CRC
                     Official Court Reporter
                     United States Courthouse, Room 6523
                     333 Constitution Avenue, NW
                     Washington, DC  20001
                     202-354-3267
                     Email:  Janice_E_Dickman@dcd.uscourts.gov

* * * * * * *P R O C E E D I N G S* * * * * * *

THE COURTROOM DEPUTY:  Good afternoon, Your Honor. This is criminal case No. 13-131-1, *United States of America versus Aaron Thorpe*.  Kelly Kraemer-Soares for the probation office.  The defendant's appearance has been waived by counsel.

Counsel, please approach the lectern and state your appearances for the record.

MR. KATZOFF:  Good afternoon, Your Honor.  Howard Katzoff on behalf of Mr. Thorpe.  Waiving Mr. Thorpe's appearance for the purpose of the status hearing.

MR. SMITH:  Good afternoon, Your Honor.  Peter Smith on behalf of the United States.

THE COURT:  If you've been vaccinated, you can remove your mask in the courtroom when you're addressing the Court.

MR. SMITH:  When we're addressing the Court.

THE COURT:  You might as well just stay.  You might as well just stay there.

My understanding is that your response to the habeas petition is not due until the end of the month, is that right?

MR. SMITH:  I think that's correct.

THE COURT:  So you're still on track to get that done?

MR. SMITH:  If -- yes, if the Court doesn't grant the government's motion to dismiss the counts.

THE COURT:  That's not likely.  But if I'm going to

grant it -- either way, whether I grant it or deny it, I'm going to write an opinion because, to say the least, it's a very unusual situation.  I don't know if you're familiar with the transcript of this trial.  Have you read it?

MR. SMITH:  I have not.

THE COURT:  You need to.  You need to talk to Emory Cole, too, who tried the case.  Have you talked to him?

MR. SMITH:  No, Your Honor.

THE COURT:  You got to roll up your sleeves, you got some work to do.  This was a very violent case.  Very violent. They didn't get the sentence they got lightly.  He did not get the sentence he got lightly.  This was no accident.  You should look at the sentencing transcript, as well.

MR. SMITH:  I'll do that, Your Honor.

THE COURT:  It was very lengthy.  And if you've read the D.C. Circuit opinion, particularly the dissent in the other case, the *Knight* case, you'll get a flavor for it.  It was a very violent case; armed robbery, armed assault, impersonating police officers.  They pistol whipped a guy, there was a drug dealer, and stealing drugs and money from the person, and they tried to deceive the police who had surrounded the area.  Very violent case.  And I'm at a loss to understand why you're making this motion.

What's behind it?

MR. SMITH:  I think primarily the -- just the Court

of Appeals decision in the codefendant's case, the *Knight* case, the most recent decision suggested that the government should move to dismiss those counts.

THE COURT: They didn't. Show me the language.

I thought I had a copy of the opinion. So go ahead, you can read it.

MR. SMITH: Yeah. Sorry about that, Your Honor. I thought I had it marked. It's cited in the government's motion.

THE COURT: Do you want to look at your motion?

MR. SMITH: It's page 1109 of the 2020 D.C. Circuit opinion in *Knight*. They talk about the appropriate remedy and they say, "Although the Court cannot order the government to do so, the government has the discretion to ameliorate any injustice that was the result from permitting inadequately counseled defendant," that's Knight, "to accept the original plea offer, but not the codefendant," that's this defendant, Thorpe, "whose counsel's performance was adequate. Even now the prosecution may seek dismissal of some or all of the charges against Thorpe."

THE COURT: Whether or not Thorpe was the victim of an ineffective assistance of counsel hasn't been ruled on. That's the 2255.

MR. SMITH: Right.

THE COURT: It hasn't even been ruled on. I'm not aware of it being the ineffective assistance of counsel. But

I'll wait and see what the pleadings look like.  I doubt it's the government's position he's the victim of ineffective assistance of counsel.

MR. SMITH:  No.

THE COURT:  I don't think that's going to be the government's position.

MR. SMITH:  No.

THE COURT:  I didn't agree with the majority opinion of the D.C. Circuit as it was.  I agreed with the dissent.

But, I tried that case.  I oversaw that trial.  I mean, both of the defendants wanted to go to trial.  They wanted their day in court, and they had it.  Trust me, they had it.  When all was said and done, they both were convicted of a long laundry list.

Now, Court of Appeals has the prerogative to decide whether there was an ineffective assistance of counsel and that Mr. Knight was entitled to the benefit of the deal and his counsel was ineffective in making sure he was counseled. That's the Court of Appeals' prerogative.

But there has been no similar ruling in this case as of today as to Mr. Thorpe.  By no judge.  Certainly not by this Court.  And I had no reason to believe that he was a victim of ineffective assistance of counsel at the time we tried the case.  If I thought that, we wouldn't have tried the case, we wouldn't have proceeded under those circumstances.  We would

have dealt with it in a different way.  That wasn't the major situation at the time.

MR. SMITH:  I understand the Court's point.  And the reason that the government took the position that it did in the motion was several fold.  One was the language in the Court of Appeals' decision, one was the fact that the codefendant got relief.  And in the unique circumstances of this case, where the plea was wired and this defendant said he would have taken the plea, the Court of Appeals seemed to be convinced of that.  And evaluating the disparity in the sentences, given that Knight was released.  And those were the main reasons the government took the position that it did.

THE COURT:  Well, it has to be concerned about the public, protecting the public.  This person got the sentence he got for a reason.  He engaged in very violent and serious criminal conduct.  Very violent.  It made him a danger to the community and he got a sentence that reflected it; over 20 years.  I don't give out sentences over 20 years by chance or by accident.  I haven't done it many times.  I've done it, but there's always a good reason.

MR. SMITH:  He has a 30-month -- 300 month sentence, I think.

THE COURT:  So that wasn't done by chance.  And the government is going to get its opportunity to take its position that it's going -- whatever it's going to be.  I mean, I'm not

going to tell you what position to take, that's up to the government's discretion with regard to the 2255.  But as of today, there has not been any ruling by this Court or any other court indicating that he was the victim, as was Mr. Knight, of an ineffective assistance of counsel.  Two federal judges said he was, Mr. Knight was.  They've ruled.  And the Court has to, obviously, abide by their ruling.  And I will.  And I did.  He ended up getting his, in essence, sentence cut in half. Mr. Knight did.  Now Mr. Thorpe wants the same deal.

So we're going to have to see how this looks with your opposition, presumably, to the 2255 motion.  And you're not going to get a ruling from me before that's due.  And depending upon how I look at it, evaluate it, you might not get a ruling for a while.  But under any circumstances -- I want this to be very clear to the government -- you will not get a ruling on this motion without an opinion.  I'm going to have to write an opinion.

This is a very unusual situation.  And it's a situation where we have -- a lot of our cases in the federal court are not involving matters of this kind, where there's very violent behavior, armed -- we have some, but it's a smaller percent than down the street in Superior Court, that's for sure.  This is one that wasn't.  Assault with a dangerous weapon, kidnapping while armed, first degree burglary while armed, possession of a firearm by a felon, obstruction of

justice.  It was a laundry list of really dangerous, heinous actions.

I'll wait to see what the government's position is on the 2255.  Maybe we'll have a hearing on that.  But don't expect to get a ruling on this motion prior to that.  And with regard to the Court's -- at the moment, inclination is not to grant it.  But I'll reserve judgment.  I'll wait and see how the 2255 looks.

MR. SMITH:  I understand.

THE COURT:  Okay.  Mr. Katzoff, I don't know if you want to throw in two cents' worth, or do you want to wait and hold your breath, or whatever?  But you're more than welcome to take the microphone.  You're always welcome in this courtroom.

MR. KATZOFF:  Your Honor, I know a little bit more about the case because I've been involved a little longer.  So I do want to just speak a little bit about -- in response to some of the Court's questions.

The government has taken a pretty thorough view of this in the context of the suggestion by the D.C. Circuit and the equities of Mr. Knight versus Mr. Thorpe and the result for Mr. Knight compared to Mr. Thorpe.  I think the government --

THE COURT:  The result is the result of the Court's having to resentence him, basically, to the D.C. Superior Court charge.

MR. KATZOFF:  It's a very unique case, as we all knew

when we brought it before the Court and when we had the hearings.  Because it's very rare that we're alleging ineffective assistance of counsel as to something that happened in Superior Court, before the case even came here, and as a result of the Court of Appeals' decision, disagreeing with Your Honor as to whether Mr. Knight would have taken the plea when -- if properly advised, if he wasn't subject to ineffective assistance of counsel.  He got the relief.  The relief was to re-offer the original plea.

The record was pretty clear.  I think the government's convinced that -- from speaking to Mr. Thorpe's counsel, even in the absence of ineffective assistance of counsel there, that he always wanted to take the plea and was prevented from taking the plea.  It was always wired and, so, he never had the opportunity.  And while I think we were hoping that there would be some more, I guess, openness to basically what's sort of a derivative claim, the Court of Appeals took a very, you know, strict view of its analysis of the ineffective assistance claim and found that relief wasn't available by law but was available by equity.

The government knows that Mr. Knight was the main perpetrator.  Mr. Knight is the one that knew the victims, knew the -- that he was a drug dealer, knew or suspected that he had the items, and that Mr. Thorpe was the lesser player in that -- in those regards and --

THE COURT:  Is my recollection incorrect, that Mr. Thorpe was the one who pistol whipped the victim?

MR. KATZOFF:  I'm not sure of the record of that.  I think it's clear that -- I thought both of them did.  But I think that there was testimony that Mr. Thorpe had --

THE COURT:  When they were outside the -- the apartment was over a garage, and as I recall it -- of course they were wearing these outfits that were rigged to look like they were police officers.  They weren't police officers, obviously.  The lady next door looked out the window and saw the two of them confront the victims, the drug dealer and his girlfriend.  They were having a booty call.  I remember the testimony about it.  Never heard the expression before in my life.  The case was a wild assortment of realities and circumstances.

So as I recall it, they put the -- they had those kind of plastic handcuffs, those -- there's a name for them.  They're not handcuffs with metal.  What's the name?  There's a name for it.

MR. KATZOFF:  Quick -- there is a name for them and it's not coming to me.

THE COURT:  Something restraints, plastic restraints.  And they put them on the drug dealer, he started resisting, as I recall the facts off the top of my head now.  That trial was quite a few years ago, about ten years ago.  Mr. Thorpe had a

pistol -- they both had pistols -- had a pistol in his hand and he started hitting the guy in the head and then he stopped resisting and then they dragged the two of them, the two victims, the woman and the drug dealer, into the inside once they got the key off of his person and unlocked the door to go inside the garage, what is the stairway up to the apartment. That's my recollection of it.

MR. KATZOFF:  I think the Court's recollection is probably accurate.  I remember some facts about that.  I'm pretty certain that there was an allegation that Mr. Thorpe had struck the gentleman with a gun during the incident.

But, I think my point in my discussions with the government throughout this and my belief in how they came to the decision to seek some sort of equities between Mr. Knight and Mr. Thorpe was that Mr. Knight was the mastermind, the planner, notwithstanding the fact that Mr. Thorpe may have jumped in and been physical with the drug dealer.  That aside --

THE COURT:  He was riding shotgun, so to speak.

MR. KATZOFF:  Yeah.

THE COURT:  Mr. Knight was the one who knew those -- actually, he knew the victims.

MR. KATZOFF:  Exactly.  And so I think the thought was that Mr. Thorpe by himself wouldn't have done this. Mr. Knight, by himself or with somebody else, would have done

it. It was really his caper.

Mr. Thorpe has done about a year and a half more than Mr. Knight. He's done the equivalent of about a 12-year sentence at this point. So it's not just like he's gotten a free ride. So in terms of a deal where he would have been out years and years ago, that's not the case. But in trying to figure out how to assess the equities of the lesser person who expressed an interest in taking --

THE COURT: This isn't a court of equity, it's a court of law.

MR. KATZOFF: It's not a court of equity, but basically that's what comes into play sometimes in terms of evaluating situations. I'm not saying that this is a court of equity, but the government has to make their charging decisions and they're given a pretty broad scope with regard to how the law treats the leave-of-court provision.

And I'm just saying that it's perhaps not as irrational as the Court thinks, knowing the facts. Because there was a lot that went into the analysis and balancing of Mr. Knight versus Mr. Thorpe, the fact that Mr. Thorpe was clear to his attorney -- and I think the Court may have even accepted those representations from the he evidentiary hearing -- that Mr. Thorpe was prepared to take the plea. But, unfortunately, his attorney was not ineffective, was what the findings were by this Court and by the Court of Appeals. So,

therefore, the person --

THE COURT:  I didn't think anyone was ineffective.  I didn't think either defense counsel was ineffective.

MR. KATZOFF:  I thought the Court found that Mr. Knight's counsel was ineffective, but that Mr. Knight would not have accepted the plea anyway, so there wasn't.  So I think that was this Court's analysis.  The D.C. Circuit disagreed, just with that issue.

But, taking -- going back to the point where the lesser-involved person wanted to accept the plea, accept responsibility, fall on the sword, take their lumps, take their ten years, and the other, in a wired situation, prohibited that, and then the ineffective assistance prevented that, over the course of time -- and the fact that he's done a year and a half already more than Mr. Knight, the more culpable person, they -- I think a lot of that went into the government's analysis.

So, I mean, obviously the government will speak for itself, but I've been involved for quite a white in getting to this point and was told, when the government decided to file the motion and seek an extension on the time to respond to the 2255 as perhaps the most appropriate response on the part of the government, it wasn't without a great deal of discussion and thought and balancing of the executive's responsibilities in charging decisions and sort of honoring the spirit of the

words in the D.C. Circuit opinion.

So there's a little more to it than I think the Court realizes.  The Court will hear and make its decision, but I hope in the end the Court agrees that notwithstanding, you know, how ugly an incident this was and how it's not like a typical federal court case, that in this situation where Mr. Night has been released and Mr. Thorpe has served the equivalent of 12 years, and that will continue to accrue -- I would tell you, I got something very good from Mr. Thorpe not long ago, that he completed his GED, which I didn't think he was capable of, in terms of mental and emotional state.  So perhaps salvageable and perhaps age and --

THE COURT:  How old is he now?

MR. KATZOFF:  I think he's got to be 40ish, or early 40.

THE COURT:  I was going to say late 30s.

MR. KATZOFF:  I would have to look.  But obviously he's matured, so there is, I'm sure --

THE COURT:  Probation might know.

MR. KATZOFF:  Do you have it?  How old is he?

THE PROBATION OFFICER:  Good afternoon, Your Honor. Kelly Kraemer-Soares.  I do have the date of birth is 1984.  So April of '84 Mr. Thorpe --

MR. KATZOFF:  Thirty-eight.  So, yeah, the Court is correct.  I thought it was about 40.  The Court has got a

better idea.  So he's getting to a point of maturity perhaps where things can take hold.  But I just wanted to give the Court a little bit of flavor.  Mr. Smith --

THE COURT:  I'm going to take all this into consideration and I'm going to go back and reread the Court of Appeals' opinion closely, very closely, and especially the language that the government's counsel is alluding to.  And I don't remember them being quite as proactive in that regard as he does, but maybe I'm wrong.  I'll go take a look.

But I'm going to write an opinion, I'll tell you right now.  I'm going to grant -- whichever way I go on this motion, I'm going to issue an opinion because this case is very unusual from a whole variety of perspectives.  And maybe it will be helpful to future colleagues of mine who might find themselves in a similar situation down the road, if I write something on it.

MR. KATZOFF:  And it's unusual in the 48(a) context. The public interest is generally defined a little differently than we normally define it and defined it at the time of sentencing.  It's more in the fair administration of justice, often to protect defendants from unreasonable things or from, you know, bribery situations or -- I mean, the historical context is very different.  So it's not the normal like public safety kind of analysis often.  It's often in a very different context than this case is.  So there's just a lot more to it

than the Court was suggesting.  And Mr. Smith is new to the case.

THE COURT:  He's got some reading to do.

MR. KATZOFF:  I thought I would at least share a little bit of that with the Court.

THE COURT:  My recollection is the trial was about two weeks, so there's a lot there.  And, of course, Mr. Cole tried it and --

MR. KATZOFF:  And I've spoken to Mr. Cole through this, too.  And I can't speak for him, but I know he had input in this, you know, in terms of understanding who Mr. Knight was, who Mr. Thorpe was in this process, even the victims.  So it wasn't done without the input of trial counsel.  Ms. -- trying to remember counsel that handled the ineffective assistance.  At any rate, everybody spent a considerable amount of time.  But trial counsel was included in the discussions, I was told, so their input is there as well.

THE COURT:  That makes sense.  They should be, they should be consulted on these kind of matters.

All right.  Well, I just wanted to give you a heads-up as to where things stand.  I didn't want the government thinking, hoping, crossing their fingers they would get a ruling and they wouldn't have to respond to the 2255.  They got to respond to the 2255.  And I wanted you to know it as well, obvious reasons, for the benefit of your client's psyche.  And

then, of course, at some point probably have -- probably going to have a hearing on the 2255 that might include a little discussion on this, this motion as well, and then I'll issue an opinion.

MR. KATZOFF:  I think it's very helpful to have had us here for the status hearing, and so I appreciate it.

THE COURT:  Hopefully we can get this whole thing wrapped up and done this fall and it will be done, one way or the other, however it's going to be done.  And I've been around this case long enough to know that if it ends up not being in favor of the defendant, there will be an appeal.  I know that. I just know that that's what's going to happen.  If it's in the favor of the defendant, there won't be any appeal.

MR. KATZOFF:  That is true.  Well, I hope the Court takes a hard look at the government's motion because there's just a lot more to it than meets the eye.  So I encourage the Court to do that.

THE COURT:  Believe me, I will.  I will do that. Thank you for your help, Mr. Katzoff.

MR. KATZOFF:  Thank you.

THE COURT:  Anything else for the government?

MR. SMITH:  No, Your Honor.

THE COURT:  Stand in recess.

                         *   *   *

CERTIFICATE OF OFFICIAL COURT REPORTER


     I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

                         Dated this 7th day of August, 2023




                              _____

                              Janice E. Dickman, CRR, CMR, CCR
                              Official Court Reporter
                              Room 6523
                              333 Constitution Avenue, N.W.
                              Washington, D.C.  20001